This is an action brought by Moon-Taylor Company, a corporation, with its principal office in Greensboro, against Gray-Smith Milling Company, a corporation, with its principal office in Wooster, State of Ohio.
The milling company shipped a car-load of wheat to W. A. Watson Co., of Greensboro, with sight draft attached to bill of lading, order notify A. G. Smith. Watson Co. paid the draft, and the plaintiff attached the proceeds, the sum of $1,120.20, the plaintiff claiming that the milling company was indebted to it in the sum of $177.50 for breach of contract for commissions and for damages arising by reason of the shipment of wheat inferior in quality to that ordered. The First National Bank of Cleveland, Ohio, intervened and claimed the proceeds of the draft with bill of lading attached.
The draft was introduced in evidence and had on its face "Collection No. 1876." It was endorsed by the milling company to the Citizens National Bank of Wooster, Ohio, and this bank endorsed it to the intervenor.
The deposition of William Harris was also introduced, and is in part as follows:
"I am cashier of the Citizens National Bank of Wooster, Ohio. The Gray-Smith Milling Company had a checking account with our bank, and on 10 December, 1915, deposited the sum of $1,112.20. It was a bill of lading and draft on W. A. Watson Co., of Greensboro, N.C. I think. Gray-Smith Milling Company was the maker of the draft. It was drawn on W. A. Watson 
Co. and was payable to the Citizens National Bank at Wooster, Ohio. The draft was dated 10 December, 1915. A bill of lading was attached to the draft. It was dated 7 December, 1915, issued by the Pennsylvania Company and signed by J. R. Shenk, agent. It was issued Leaksville, Ohio. The goods were shipped to the order of Gray-Smith Milling Company, Greensboro, N.C. I sent a draft and the bill of lading to the First National Bank of Cleveland. Before sending them I gave the Gray-Smith Milling Company credit upon their account. We accepted the draft and bill of lading in the *Page 409 
regular course of business, and credited it to the Gray-Smith Milling Company. The balance of the Gray-Smith Milling Company on 11 December, 1915, was $1,986.45; on 13 December, 1915, it was $1,309.39; and on 14 December, 1915, their account was overdrawn $965.74, and on the 16th they were overdrawn $2,776.76."
Q. "You have stated that you sent this draft and bill of lading to the First National Bank of Cleveland. Had any arrangement been previously made by which you could send such drafts and bills of lading to that bank?" A. "Yes."
Q. "How was that arrangement made?" A. "I wrote to the bank, asking them whether or not an arrangement of any kind could be made, as we understood it was being done at some other places. I received a letter from them, saying they would be glad to do that."
"Exhibit C is my letter to H. R. Sanborn, assistant cashier of the First National Bank of Cleveland. Exhibit D is the reply of H. R. Sanborn to my letter."
At this point counsel for intervenor read to the jury Exhibit C and Exhibit D.
"In December, 1915, an account existed between the Citizens National Bank of Wooster and the First National Bank of Cleveland. The volume of business done between the two banks was about $8,000 to $10,000 a day. I think our minimum balance with the First National Bank was about $10,000 a day.
"We accepted this draft on the credit of the bill of lading attached to the draft. This deposit slip of 10 December, 1915, shows other items. The other items were checks. All these items were sent on their proper course for collection."
Q. "In the letter which is marked Exhibit D, I observe, it says that your bank is to be charged with interest at the rate of 5 per cent during the period that the drafts are outstanding." A. "Yes, sir."
The letters referred to are not in the record.
The deposition of the assistant cashier of the intervenor was on file, but was not in evidence.
The issue submitted, and the answer thereto, are as follows:
"Is the First National Bank of Cleveland, Ohio, the intervenor, the owner of the proceeds of the draft attached in this cause and entitled to the possession of same?" Answer: "No."
The intervenor, the First National Bank of Cleveland, claimed to be the holder of the draft in due course. This was denied by the plaintiff, who alleged and contended that the intervenor was not a holder in due course, but only an agent for collecting the draft, and that the intervenor took the draft with knowledge of its infirmity and in fraud of the *Page 410 
plaintiff's right. This was the theory upon which the case was tried and argued to the jury.
The plaintiff made no point as to the endorsement of the draft, and the court charged the jury that the endorsement was admitted, but the court was of opinion that upon the evidence introduced there was sufficient evidence to be considered by the jury on the question of the alleged fraud or knowledge on the part of the intervenor, i. e., whether the intervenor was a bona fide holder in due course, or whether it took the draft with knowledge of the plaintiff's claim or as a collecting agent. Among other things, the court charged the jury as follows:
"The burden of this issue is upon the intervenor to show by the greater weight of the evidence that it is the owner of the proceeds of the attached draft. (If you find by the greater weight of the evidence that the intervenor is the owner of the proceeds of the draft attached in his case, you will answer the issue `Yes.' If you do not so find, you will answer it `No.'")
The intervenor excepted to the last preceding paragraph which is in parentheses.
The court charged the jury at length, presenting the evidence and the contentions as to whether the intervenor was a holder of the draft in due course, a purchaser, or merely a collecting agent.
There was no other exception in the charge.
The intervenor moved to set aside the verdict as against the weight of the evidence. The court, in the exercise of its discretion, denied the motion.
The intervenor moved to set aside the verdict and for judgment, notwithstanding the verdict, on the ground that upon the admission of the endorsement of the draft, and upon the undisputed evidence in the case, there was nothing to be submitted to the jury and the intervenor was entitled to judgment. Motion overruled. Intervenor excepted.
There was judgment for plaintiff. The intervenor excepted and appealed.
The burden was on the intervenor to show title to the property attached (Mfg. Co. v. Tierny, 133 N.C. 631), and consequently his Honor could not do otherwise than charge the jury that it must establish the fact by the greater weight of the evidence, which he did in the part of the charge excepted to.
Nor was the intervenor entitled to judgment, notwithstanding the verdict. *Page 411 
The only admission made by the plaintiff was as to the endorsement; and the credibility of the other evidence tending to prove that the intervenor was the holder, in due course, of the draft, if uncontradicted, was for the jury and had to be submitted to them.
In other words, the burden was on the intervenor to prove that it was a purchaser, for value, of the draft, without notice of any infirmity, which is denied, not admitted by the plaintiff, and it moves for judgment upon the single admission of the endorsement of the draft by the Bank of Wooster, which is as consistent with sending the draft for collection as a sale, and particularly so when there is written on the face of the draft "Collection No. 1876."
Again, the objection that there is no evidence to sustain the contention of the plaintiff that the intervenor was a mere collection agent comes too late after verdict. S. v. Leak, 156 N.C. 646; S. v. Harris, 120 N.C. 578, and cases cited, criminal and civil. If, however, the point had been made in apt time it could not have been sustained.
The draft had on its face "Collection No. 1876." The cashier of the Wooster Bank testified: "We accepted this draft on the credit of the bill of lading attached to the draft. This deposit slip of 10 December, 1915, shows other items. The other items were checks. We sent all these items on their proper course for collection." This was sufficient without other evidence to take the question to the jury as to whether the intervenor bank, to which the Wooster Bank sent the draft, received it for collection or as a purchaser.
It also appears that by agreement between the two banks the intervenor charged interest against the Wooster Bank, which is inconsistent with a purchase and the ownership of the draft. If the draft was bought and paid for as the intervenor contends, why should there be an interest charge either way?
We find no reason for disturbing the verdict and judgment.
No error.